Good morning, Your Honors. May it please the Court, Andrew Zivitz, on behalf of the plaintiffs and appellants in this matter. Your Honors, may I reserve time, or just, may I reserve five minutes? You can take whatever you want, but as I said, the clock is going to keep running straight down. So when it comes close to saying five minutes, if you really want five minutes, then sit down. Thank you, Your Honor. Your Honors, there's one very straightforward and discreet issue at the heart of this appeal. That is whether or not a complaint that contains no allegations of fraud and no claims in fraud can sound in fraud so as to trigger the heightened pleading standard of reliance. Well, we're past that. I mean, I understand, you know, your brief made that point front and center, too. But this circuit, for good or ill, is past that. So we know from, I don't know how to pronounce any of these things, but Dow, Vess, and Zach, that that can happen. That a complaint that does not contain allegations or claims in fraud can sound in fraud? Yes. Okay. Let me respectfully say that with respect to Vess and with respect to Dow, both of those cases stress that it's only the allegations of fraud that can cause a case to sound in fraud. Well, no. There they saw, at least in the one case where you've got securities fraud allegations, that makes it easy to answer the question. Absolutely not. But the question remains, does the complaint which doesn't allege fraud nevertheless sound in it, or is it grounded in fraud? Thank you, Your Honor. No, I appreciate that. The issue, I think, still comes back to, and I think Your Honor pointed it out, what do the allegations say? Are the allegations grounded in fraud? Do they use terminology and language that suggests that the defendants did something improper or concealed something or deceived the public? On the face of this complaint, there is nothing in our complaint that suggests defendants did anything wrong. Everything is grounded in negligence and innocent conduct. Let me get back to the principal claim here. The claim here is a case under Section 11 of the Securities Act. That's a strict liability claim. The only thing that we need to plead is that the plaintiff purchased stock pursuant to an offering and that the offering documents contained a material misstatement or omitted a material fact. That's what we plead. We didn't say defendants did anything improper. If anything, we said that they did everything negligently and innocently. Well, you said they got together and calculated a way, basically, to inflate the value of the stock in order to make their IPO succeed. No, actually, Your Honor, I'm not... You said that they didn't correctly disclose... I'm going to have your problem. We've got these cases. We've got all these cases. They're all... I'm sorry. This was the Samson case. Yes. That they did not disclose that their biggest customer was about to put them out of that business. I mean, this is a classic kind of fraud situation. How could you make a mistake about that? Well... Your Honor, I apologize. If the allegations, if that was your read of the allegations, that was not our intent. Our allegations stated, and let me just... Yes. Go ahead. The allegations on their face say that at the time of the IPO prospectus, at the time of the IPO, was such that it was the beginning of the end of the relationship between Samsung OLED, Ledis' primary OLED customer, and Ledis. We don't know what was happening with respect to what Ledis knew, what they didn't know. At the time, Samsung OLED began to get its product from its parent company. Sales might have dipped immaterially. They might... Immaterially, excuse me. They might have dipped substantially at the time. But the point was, the state of affairs at the time of the IPO prospectus was such that Samsung OLED was beginning to get the drivers that it normally got from Ledis, from its parent company. That's pled on the face of our complaint. We don't suggest anything about Samsung OLED is purposely deceiving Ledis, that Ledis knew about it, that the individual defendants knew about it. How could it not know about it? Because, well... It's its biggest customer. Can let me pose a scenario? At the time of the IPO prospectus, let's say the IPO went off in January. That's very close to the end of that quarter, that quarter end of January 3rd. It's very possible that for a month, sales had dipped between Samsung OLED and Ledis. It might not have been material enough for the individuals at Ledis to appreciate the effect that it was going to have on the company forever. And it just so happened that that was the beginning of the end of the relationship between Samsung OLED and Ledis. And in fact, shortly thereafter in May, it was disclosed that the bottom had dropped out. There was no more business between Samsung OLED and Ledis with respect to these OLED drivers that Samsung Electronics was manufacturing in-house. And then the quarter thereafter, the bottom dropped out even further. So, but again, I want to get back to the allegations in the complaint. The complaint allegations sound in negligence. They sound in innocence. This is a strict liability statute. We're not, the point of applying. I, let me just, let's say, let me say this. I may be sympathetic to the notion that our case law is problematic, okay? But it's there. And we can't do a thing about that. Well, but Your Honor. Whether I'm sympathetic with it or not, it's beside the point. The case law is there. And the question is, does the complaint nevertheless, even though it is nothing other than a misstatement, does it nevertheless sound in fraud? If so, those allegations have to be pled with specificity. That's all. And I It doesn't mean you can't state a claim. They just have to be stated specifically. And I agree with you 100 percent. But I think the case law, Vess and Dow in particular, and I can read passages from the case, it deals with the allegations of fraud. Again, there's nothing on the face of this complaint. And let me just step back for a second, because I think the root of the problem in this case is, if this case is held to stand, if it is, if it is the case that a court can determine whether something's material to a company, that management must have known about it, then every case will be found to sound in fraud. And here's why. Section 11 only holds material misstatements and omissions to be actionable. And if a statement, a misstatement  And if management must have known about it, they must have meant to serve or to issue a prospectus with fraudulent intent. The spiraling effect of this would be catastrophic. Every case will be found to sound in fraud. Every defendant will raise the issue that, hey, this issue was of such import to the company. They must have known about it. And because they must have known about it, they must have known the prospectus was false and misleading. Because they knew the prospectus was false and misleading, they issued it with fraudulent intent. Again, I go back to Vess and Dow. All of each of those cases, if you look at the allegations in those cases, they were rooted in intent. Let me ask you a specific question. Stack, which you didn't mention, was really awfully similar, because there the company went public knowing, or the allegation was that it went public knowing but without disclosing that Microsoft was about to come  in. And it was rather similar to the situation that's alleged here with respect to Samsung Oil AD. And nevertheless, we said that sounded in fraud. It seems to me like it's awfully close. Let me mention two things with respect to Stack. First of all, Stack was an Exchange Act and a Securities Act claim. There was one set of facts that underlied that complaint, and fraud was riddled throughout that complaint. That set of facts, those allegations were rooted in fraud. There's no question about that. So that's why this Court, my reading of it can't say that. If that allegation is rooted in fraud, then how in the world can an allegation that says the same thing not also be rooted in fraud? Because the allegation doesn't say the same thing. The allegation is in Stack as well. It says that Samsung was going to make a competitive product that would crater a good percentage of Davis' business. Two differences between the two cases, major differences. One, in Stack, there were allegations that Stack knew Microsoft was planning to enter the market that Stack was interested in. So again, this is a fraudulent concealment case. That's the first issue. The second issue is that it's factually distinct. In that case, the issue was Microsoft was, quote, unquote, looming as a potential competitor. So the state of affairs at the time of the IPO in Stack was that Microsoft might enter the market. And of course, there's no obligation to disclose that somebody might enter the market, anybody might enter the market. The issue here is at the time of the prospectus, and it's not even so much on the company, was getting its drivers from somewhere else. That's our allegation. Whether management knew or didn't know, it's quite possible that at the time of the IPO, there were still sales in the channel that were getting funneled through. But Samsung OLED was no longer doing business with the company. It was no longer going to do business going forward. It's a state of affairs issue. What was going on that was affecting the company, whether or not they knew about it or not, it's a strict liability statute. And that's one of the things that came up at the district court level is defendants did a very good job of telling the judge, well, how could we have known? How could we have known about a competitor? How could we have known about this? That's a due diligence defense. That comes up later, after discovery. Discovery fleshes all this out. If we got our facts wrong, which I know we didn't, but if we did, discovery will get rid of this case. And the point is that Rule 9b is only triggered when you disparage defendants. It's there to protect against reputational harm. Let me ask you a question about this. If all you have to plead for a Section 11 case is the purchase and that there were misstatements in the IPO, why was it necessary to allege a 30-page complaint with all these evidentiary facts? What was the purpose of that? The purpose of it, Your Honor, was to show that we had our facts right. Again, I'm relying on the face of the complaint. We were saying that the state of affairs at the time was X. We didn't say that defendants knew X. We didn't say that they purposely concealed X. We just said, here's what was going on. You're absolutely right. Under the new Supreme Court decision in Twombly, I would submit that I'm glad we did plead the way we did, because we do have to show a set of facts that would support a Section 11 claim beyond just no set of facts that would render it inconceivable, the theory of the complaint. But again, there's nothing — there's nothing in our complaint, and nobody's — nobody's been able to point to a statement in our complaint which suggests, or I shouldn't even say suggests, which alleges that defendants did anything improper. And under — in Vess and in Dow, the whole point of when Rule 9b applies is if the allegation suggests the defendant did something deceitfully. And if they — for instance, in the Dow case, it was a massive fraud. And it was one set of facts that supported both the Securities Act claim and the Exchange Act claims. And the Court said, I'm not going to sift through all these allegations to determine which ones go along with the Securities Act claims and which ones go along with the Exchange Act claims. This is a fraud case. Our case is not a fraud case. Well, there's some statements in Vess that when you have that situation, you're supposed to take out the — the — The fraud. Yeah, the fraud allegations and see what's left and see if what's left amounts to a proper claim under the non-fraud claims. And the — and the district court did not do that here. What the district court found, reading between the lines of the opinion, was the entire thing just sounds like fraud because — and what — what Judge Breyer said in her oral argument was, I can't believe that they didn't know. And by stating that, and I say this with all due respect, that's writing facts into the complaint — allegations into the complaint that weren't there. The argument here is — Well, well — Maybe you used the references from it. Either that, or there were documents attached to the complaint, or there were references to the IPO and other documents that were filed at the — at the exchange, correct? Yes, but there was nothing that suggested that anyone knew on the defendant's side or the — Well, the whole business about this was being a small company. There were only 65 employees and whatnot. All of that was derived from records that were filed with the SEC. Absolutely, Your Honor. But I — but again, I proffer the point, and I'll end with this because I want to save some time. The issue here is where do you draw the line? If the court can make a determination that something affecting the company at that time was so important that the company must have known about it, you're then — the court then has to make the next factual leap of, because the company knew that there was something going on, it purposely issued this prospectus with fraudulent intent. That, to me, is — is — that's three — three fact-finding jumps that at the motion to dismiss stage, especially where we didn't allege anything on the face of the complaint that would warrant triggering 9b to protect defendants, is too much at the motion to dismiss stage. And I'll reserve the rest of my time, unless the Court has any questions. Okay. Mr. Levitz, you have all the time left that you have now, but I do have a different question. So you have 5 minutes and 12 seconds. My — my different question is, I'd like — I'd like for you — to give you an opportunity to explain to me why my inclination to strike the brief should be set aside. As I — as I see it, the appendix consists entirely of stuff that was not in the record. May have been put before the district court in the form of a notice — a request for which the district court's decision was made. The brief refers to this stuff throughout in one way or another, which I would suggest infects the whole thing. It's plainly contrary to the federal rules and to our rules to include even a single document in an excerpts of record that is not part of the record in the district court As I understand it, there was no question about being advised that this was a problem, and yet the brief is still in front of us with this — with this appendix. So I'm — I'm very troubled by it, and I — but I did want to give you an opportunity to respond and — and to persuade me that I shouldn't be troubled. First of all, Your Honor, let me apologize that there were documents that were included in the — in the excerpts of record. There's no excuse for that. The only thing I can do is apologize for the procedural issue. As far as why I don't believe the Court should be troubled by it, the central issue here, whether or not this complaint sounds in fraud on its face, the motion to strike need not even be decided to get to that core issue. There's nothing on the face of this complaint which sounds in fraud. Now, let me also state, and Your Honor pointed to it or touched on it, there were three cases — so let's talk about the documents that were attached. The three cases, the DDI complaint, the Turnstone complaint, and the Calpine complaint, as Your Honor mentioned, were part of the record, at least in our estimation, were part of the record below because they were attached to a filing, and I believe the rules say that anything that's filed with the district court is part of the record. We put that in our opposition brief. Whether we're wrong about that, that's just a misinterpretation of the rules. Again, there was no bad faith there. Well, if that were true, you could just file any kind of junk in the district court and then pass it on to this court. I mean, clearly, what is part of the record is the record of the decision that's made by the district court, and the court — that was not part of the district court's decision in any respect, right? It wasn't referenced in the — in the district court's opinion, absolutely. We misinterpreted the rules on that one, Your Honor. It's — as I understand it, the rule says anything filed, including exhibits with the district court, are considered part of the record. But, again, putting a finer point on it, the issue was this doesn't infect the — the brief here because it's just identifying complaints that were filed in other cases that were found not to sound in fraud to have virtually no effect. And references to current market conditions are just okay? The — no, that's not okay. The — the — the price of Leda stocks should never have been in our brief. No question. Okay. And — and I — and I submit to the court that we, you know, agree to take that out. I don't think there's — I think there's maybe one sentence that discusses of the price of Leda stock currently. But that — you know, that is a tiny subset of what's — what's part of our brief. Our brief is essentially the three complaints, or the — the documents at issue are three complaints that found virtually identical language not to sound in fraud. Those are the Calpine, DDI, and Turnstone complaints. The Biolase decision is a decision that was handed down several weeks before we filed our brief. We attached it in the interest of providing the court with the documents so the court wouldn't have to scramble for it. And the other documents, the Samsung documents, were appended and not even discussed in the brief. They were, excuse me, identified in a footnote as evidence that we could use to amend because I think the court's decision in the Bantive case provides that you better be able to put the information forward to suggest what you're going to amend with if, in fact, you have to — you're given leave to amend. So that was the only reason we put that in there. There is one other issue, and that's more of a factual issue, which is — which is the correct Samsung entity that created the product that caused Samsung OLED not to be a client or a customer of — of Ledis anymore. The issue there is defendants raised the issue in the motion to dismiss below. We agreed to correct it. We dropped a footnote saying we're happy to amend, but we think it's a distinction without a difference because if Samsung OLED's parent created the product rather than Samsung OLED, the — the result is the same. Your primary OLED customer is getting its product elsewhere, not from Ledis. Defendants raised that. We believe that's of record. And we're not — we can't come into — I can't come into court and tell the court that Samsung OLED created this product when I very well know that it was Samsung Electronics that created the product. So, Your Honor, I — like I said at the outset, I apologize. There's no excuse for it, and I think it all boils down to whether or not the motion to strike really has any effect on the core issue here, and the core issue is this complaint does not sound in fraud. Okay. Thank you for responding. Thank you, Your Honor. And you do have your full time for rebuttal. Okay. May it please the Court. My name is Grant Fondo. I'm here representing Ledis and the individual appellees in this matter. At the outset, I'd like to inform the Court that I'm going to be reserving 10 minutes for counsel for the underwriter, Kevin Rosen. As Judge Breyer correctly noted and this Court has noted, this is a very unique case with very unique facts. You've got a situation, although it's very on point with Stack, but you've got a situation here where you have a company, very small company, with two products. One product, and each represent roughly 50% of the income of this company. One product, and they're both display drivers. One of those display drivers is an LCD display driver.  The product at issue here, which is the OLED display driver, goes to another company. Again, all the sales of that product go to one company, and that's Samsung OLED. The core of the allegations here are that at the time of the prospectus, the company and the defendants were witnessing the drop in prices of this OLED product and that the OLED product was being, their OLED product was being replaced by a Samsung entity, depending on whether we look at the complaint or the briefs, but a Samsung entity. As Judge Breyer correctly found, when you are sitting there drafting a prospectus and you're couching events as future events, that this might happen, it's a risk. At the same time that you are, since April, based on their complaint, several months prior to the IPO, are witnessing these events, and these events are taking place, and it's causing a material decrease in your revenue on one of your core products, one of your two core products, and you only have one customer. It is simply, that is a fraud allegation. That is a quintessential fraud allegation. It's simply implausible that for two months, and as they were preparing the prospectus, that the defendants were not, if this was happening, as alleged, that the defendants were not aware of this. You have to plead a 10b-5 claim. Excuse me? You have to plead a 10b-5 claim. Excuse me? I'm not sure I understand the question. Well, you say it's fraud. These guys want to, these plaintiffs want to allege a Section 11 claim. Yes, and under the decision of the court. Why can't they allege a Section 11 claim? Well, they have, but they have to meet the 9b standards. This Court has held in stack and vest that the courts act as a gatekeeper. In a Section 11 claim, though, fraud is not an essential element. Correct, Your Honor. But, but. I don't quite follow the. Sorry. So, in this Court. What you're saying is in these circumstances, they can never plead a Section 11 claim. I think that's right. When you allege. That doesn't seem to be right with the securities, you know, with Section 11. Well, but, Your Honor, the rule 9b, as this Court has held in stack and vest and other decisions, when a complaint sounds in fraud, plaintiffs are held to the 9b standard as to the circumstances amounting fraud. And that's. Well, in Dick, though, they had both non-fraud claims and fraud claims. And they alleged a single course of conduct. Well, this. So, Your Honor, that's correct. But the decisions of stack and vest are not cases. And vest is actually not a. Yeah, but you take vest. You know, vest talks a lot about Securities Act cases. True, Your Honor. But. And you take the principle from vest. But, Your Honor. But vest and stack address this in the following context. That when you. What you plead is a fraud claim. No matter how you may want to couch it. That the courts act as a gatekeeper to put the plaintiffs to say you have to plead the requirements of 9b. Claims that are quintessential fraud do stain the reputation of defendants. They burden this Court. And this Court in stack, vest, Dow have said that if you plead a quintessential fraud case like this is, where the gravamen of the complaint is fraud, you need to meet the particularity requirements of 9b. And that's what Justice. Judge Breyer correctly held in this decision. And I want to point to. So, as this Court has also had. Plaintiffs have tried to assert, well, listen, we used some terms of negligence. We didn't use the fraud terms. As this Court has correctly heard, that's not of no moment here. No, I understand you look at the underlying allegations. But I can't understand why they still can't. I'm having a hard time accepting the notion that just in these circumstances here where you have a small company. And that's really what Judge Breyer went off on. He looked at the documents that were referred to in the complaint. And you can tell from those documents that this was a very small operation. Well, in addition to that. And he said they must have known. Well, but. They had to have known what was going on. And they had to. You know, as you just started out with. When they were preparing the IPO, they must have known. And they did that intentionally with the intent to deceive. Well, first of all, plaintiffs allege that defendants knew. They try and back away from that. But if you look in the complaint in. Which paragraph? Paragraph 55. Hold on. Sure. And I quote. I'll let you get caught up. Go ahead. Letus was experiencing pricing pressure to its OLED product line and faced further price reductions going forward. As a result, at the time of the IPO, defendants were witnessing and further expected the fall of Letus OLED prices and the fall of revenues and earnings with respect thereto. Plaintiffs also alleged earlier in other places in the complaint that as of April 2004, these prices were decreasing and this product was being replaced. So not only is it based on the allegations, the specific allegations of this complaint, but as Judge Breyer correctly held, we're not. The judges are a gatekeeper. They're not supposed to suspend disbelief. And when you have one product, as plaintiffs described, it's a flagship product. And when you have that one product and two months before the IPO, you're seeing prices go down. You're seeing your supplier or your customer not purchasing that product in the same quantities. And you have material decreases in revenue. It's simply not plausible that nobody knew. And, in fact, plaintiffs conceded much. If you look at the transcript, I know they back away from it, but Judge Breyer asked some very particular questions, some of the questions that this panel has asked. And plaintiffs' counsel responded, and let me quote, I'm referring to page 118, line 18 through 119, line 4 of the record. The court, now, wait a minute. You mean you don't know whether they, tell me logically, how you could not know that their orders were being decreased. You mean you're saying that this company of 67 people doesn't know that the orders, arguably, instead of being 1,000 orders or 5,000 or 200 or 8 or some other number, you said they don't know. Plaintiffs' counsel, Your Honor, I could surmise that they knew, given the size of the company. The court, because it's logical that they would have known. And if they knew, then that's fraud, isn't it? Plaintiffs' counsel, that's fraud. And that's what we have here. It's simply implausible that this company could see a flagship product's revenue going down and down and down two months before the IPO and then simply put it in perspective. Certain things could happen in the future, as alleged to plaintiffs. That's simply an improbable. What do we do with Vest? How does Vest apply in this circumstance where, you know, when Judge Fletcher talked about it in Vest, about disregarding the fraud allegations and then looking to see what's left? Oh, you mean stripping down, then, Your Honor? Yes. Well, I don't think you can strip down in this case. Why not? Because the question is you know, what if you take out paragraph 55? It doesn't, at the end of the day, it doesn't change what you have here, which is you have the core allegation that the revenues of this flagship product were materially decreasing. And they had to have known about it. They had to have known about it. And that's, Your Honor, you could, I mean, if you, the purpose of 9B is to not allow what courts, what plaintiffs are trying to do here, which is to have a case where they admit they have no facts to support their allegations. They admitted that they could not meet the Rule 9B particularity requirements. And so what they are trying to do is trying to get to discovery and to tarnish the reputation of these defendants, but trying to plead it as a negligence claim. And there are certain claims, such as this, such as in Stack, where you simply can't get there, that this is a quintessential fraud claim and this Court, through its decisions, invests in Stack. Well, I'm still, you know, I still, Stack is helpful, but Stack still was. It combined both fraud and non-fraud claims together. And there the Court's talking about a unified course of conduct that they're using to support both claims. And that's not this case. This case is strictly a Section 11 claim. Well, you, which, I'm sorry. Where you're essentially saying here, given these circumstances, that you can glean by looking at documents that were referred to in the complaint, this was a small operation, and surely they must have known everything that was going on. And therefore, in this instance, they have to plead, they have to meet the 9, the heightened pleading standard. Well, Your Honor, I think this is a unified course of action. They're alleging that these defendants were, it's, remember, it's one issue, really. What was happening with this product? The revenues were decreasing with this product, and they failed to disclose it. So it's not as if you've got things over here and invest, you had, you know, various allegations as to a third party about, you know, whether there were disclosures about fundraising, things of that nature. In here, you've got one issue. Was the revenue decreasing materially before, and was it decreasing as early as April 2004, two months before the IPO? That's what they've alleged. This plaintiff's recognized in, when responding to the issue about dismissal with prejudice, and I refer to the court on the record 142, pages 142 and 143. The core allegations don't change. No matter what they could or could not do with that complaint, their core allegations remain the same. It's the same theory, that the revenue was decreasing, they were witnessing these events. It was a flagship product. It was 50 percent of their revenue. All of that revenue went to one company, and it was going down. Your Honor, if I may, I think I've gone over my time. Certainly. Thank you. Sure. Mr. Rosen. Thank you, Your Honors. Kevin Rosen on behalf of the Underwriter Defendants. And, Your Honor, what I'd like to do is pick up with your questions with respect to Vess. Let me start with a proposition that I think Judge Reimer is exactly correct, that this complaint, in terms of what's alleged, clearly is grounded in fraud. The allegations are replete throughout this complaint. Well, does the same, whether that's right or wrong, okay, does the same theory apply to underwriters? Absolutely, Your Honor. Why? Because, among other reasons, the underwriters are grouped together with all of the other defendants. There's no distinction in this case, unlike, for example, the Roblox case. Well, yes, but the rationale doesn't necessarily extend to underwriters. Well, it certainly does. That is, that they would necessarily. I mean, you know, either management was an idiot or they knew. It doesn't necessarily apply to the underwriters. It does in the factual context of this case, Your Honor. Okay. I understand conceptually your point. And I understand conceptually that there is a distinction between underwriters and there is between underwriters and management. But in terms of what's the question here is, we start with a complaint. And the issue then is, does or does not Rule 9b apply? And if 9b applies, then we have to address the question that Judge Pez is asking, which is, do we have to strip away something? And respectfully, the answer is no, and I would like to explain why. But then, once we get to that point, if the complaint alleges, without distinction among any of the defendants, that they all knew, and that's precisely what it alleges, it's not just paragraph 55. I mean, Mr. Fondo is giving you one example, but from the very outset when the complaint, when they're describing ---- Well, paragraph 55 is the best example. Well, but ---- I mean, because if you're witnessing something, I mean, you see it, you hear it, you know, it follows. But I still have the same question. Does it necessarily, does the logic necessarily follow when you're talking about the underwriters? In the abstract, my answer is not necessarily. Is that ---- In the context of this case, with this complaint ---- Because? Because this complaint alleges that all defendants, including the underwriters, knew. It's in, at the outset of the complaint, when it gives its overarching presentation of the case, it talks in paragraph 9 about the rapid decline of Sanson's purchase of Leedis' OLED drivers. It talks in paragraph 10 about how Leedis began experiencing pressure to cut prices. It talks about how industry experts with whom defendants, all defendants, were no doubt familiar, represented that greater price cuts on OLED products were afoot in 2004. It talks about how all defendants misrepresented this information by failing to include it, which the allegation beforehand said they knew. It talks about how the IPO progressed without mentioning a word about the foregoing materially adverse developments, which the paragraph just before it said all defendants knew about. So my point, again, Your Honor, I understand the question, and I agree with you. In the abstract, it is possible. But in the context of this case, it's not, because that's what's been alleged. So if you then work backwards, and maybe what I'll do is circle back to this. If you start initially with the proposition that this isn't a complaint grounded in fraud, okay, for the reasons Your Honor stated, then 9b applies. Well, it's clearly a complaint grounded to me. It's a complaint grounded in fraud to the extent it is against the company. But I still have the same question with respect to underwriters. I just don't follow the logic, because you're just sort of asking sort of logic and common sense at the gate, aren't you? Not at all, Your Honor. Again. Because they weren't there witnessing. They weren't there doing all this stuff. But the complaint alleges that this stuff was known before the IPO. Okay. I mean, again, I will concede to you that in the abstract, your point is well taken. And it is possible to allege a complaint in circumstances like this, for example, to say that the company knew something and the underwriters didn't. I would concede that. But the fact is, that's not what's alleged here. And so the question is, do you go back? And what policy does it serve to allow them to go back and take out something that they've already alleged to be the case? Okay. Well, let me ask you. This is probably a question you better ask of Mr. Zivitz. But was there a distinction made in the district court between the underwriters' position and the company's position? There wasn't. Counsel raised no distinction in the district court. Okay. I mean, basically, your bottom line is whatever happens to them happens to you because it was all treated as one ball of wax. Exactly, Your Honor. And that's why I think, again, while I understand the distinction you're trying to draw and I concede that fact as a possibility under certain circumstances, I think we have to address the case as this case, at least in terms of the outcome. And so from this standpoint, you don't the application of VESS doesn't change the circumstance here, which gets at the questions you were asking before. VESS is very different. VESS involves state law claims. And in VESS, there were essentially two lines of argument. One, it involved the use of the Ritalin drug. One was an alleged fraudulent conspiracy among the company and certain groups. The rest of it were allegations, basically, that include allegations about failure to disclose by Novartis about the efficacy, about the safety of the drug. Very different lines of issues there. Very easy to say, okay, we're going to ignore the conspiracy, which is what the VESS court did, or we're going to write off the conspiracy as 9B. And then we're going to look at these, basically, product liability and disclosure allegations as something different. That's very different. And you can see how perhaps you might be able to do that. But that's very different from a case like this, where the entire case, as Mr. Fonda was discussing, the entire case is grounded in fraud. I will point out, by the way, that VESS relies on an Eighth Circuit case in Carlin, which expressly rejected the Stack case. But, moreover, the difference of this case, where it's basically one thing. It is the revenue to be derived by a sole customer is declining pre-IPO. Does it mean that they can't allege a Section 11 claim? No. They can certainly, Your Honor, allege a Section 11 claim. We're not saying that this has to be true. No, you're saying that they have to meet the heightened pleading requirement. Exactly. Because there are certain things. But fraud is not an essential element of a Section 11 claim. But it doesn't matter. No, I understand that. You could have a Section 11 claim just premised on fraud. Right. You have to concede that, because otherwise you're sliding off Stack. No, I understand that. So the point here is that when you have a factual, a set of factual circumstances and this is somewhat unique, and I'm not suggesting that what I'm advocating here is going to be the case in every circumstance. But when you have a situation here where you have a small company, all this in the record, all this alleged. Small company, one customer, alleged decrease in revenue, material decrease in revenue known before the IPO. Can they allege a Section 11 claim? Absolutely. But in that kind of circumstance, it has to be pleaded with particularity under 9b. Could they potentially allege a 10b-5 claim too? If they want to, perhaps. So, so what, what the specific, whether there's a 10b allegation in this case versus the other cases is not relevant. Whether they use the word fraud, just like the failure to use the word fraud is irrelevant. We know that from Stack. It's not what words they use. It's not what causes of action are or not in there. What's most relevant here is what is this case grounded in? That was the word, that was the terminology used in Stack. Grounded. Or sounds in. Sounds in or grounded doesn't rise and fall on specific words that are or are not used. And it doesn't rise or fall on whether there's a 10b-5 claim included in the case. Because those claims derive from the facts that are alleged. And when the facts that are alleged can only, as Judge Reimer was referring to earlier, can only commonsensically, as, as courts now are required to apply under tele-abs. And I think before, before my time runs out, I do think it's important to note that tele-abs changes the dynamic a bit. Because the Supreme Court has made clear that the district court is supposed to engage in a bit more evaluation, if you will, of the complaint and the plausibility and the pros and cons of arguments than had been the case even with what we had in Stack. And you put that gloss of tele-abs onto the circumstance. Okay. Thank you, Mr. Rosen. Thank you, Your Honor. Mr. Zivitz. Five. Five minutes and 12 or so seconds. Thank you, Your Honor. First of all, a few things to just clear up. Tele-abs states that you need not plead more than you have to prove. So I think trying to apply tele-abs to this case actually helps us, because we don't have to prove fraud here. Let me also just clear up something, because my colleague was saying that we pled that they knew that sales were going down. We never pled that. No, you just pled that they witnessed it. You're absolutely right. There's one allegation that says they witnessed and expected pricing pressures. Not that revenues were going down. This was just pricing pressures. Again, under this Court's decision in Vess, that one allegation gets stripped away from the complaint, and the remainder of the allegations get assessed, depending on whether the court ---- Well, tell me, how do you understand, what do you understand stripping to be? Because stripping to me doesn't mean you just simply rewrite the complaint in a way that it possibly, arguably, maybe could have been written. I mean, it's not up to the court to sit down and draft a complaint that escapes Rule 9. So is that what stripping means, just to take out a couple of words that probably shouldn't have been in there? Or does it mean looking to see if there really are causes of action set out that either don't sound in fraud or aren't part of an overall fraudulent scheme? My understanding from my read of Vess is that the allegations that expressly allege fraudulent conduct get stripped away from the complaint. Again, there is nothing in the face of this complaint that expressly alleges fraudulent conduct. And I know we keep mincing words here, but the issue ---- this is not a case of defendants concealing something so that they can unload their stock, which was the case in Anchor Gaming. Anchor Gaming was a Securities Act case, strict Securities Act case, that was found to sound in fraud because the allegations that plaintiffs used said that they were ---- that there was concealment, that there was knowledge, that there was fraudulent intent. And the Court said in this case, Rule 9b is triggered because the reputational harm that might come to defendants from not requiring 9b is important. So your view here is that we don't even get to the stripping issue because there are no allegations of fraud. Well, I think that the question ---- There's a question as to Paragraph 56 with the witnessing and expecting, but I would direct the Court to say the extensing thing. So your position at maximum, then, is if there's going to be any stripping at all, or if stripping is implicated here. Boy, that sounds terrible, doesn't it? That it would only be with respect to that paragraph. I believe that's a fair statement, Your Honor. And let me also touch on the point that I made before, but I want to emphasize it. I think what happened with the district court's opinion is dangerous in this context in this sense. The Court is making a determination not from the face of the pleading that defendants must have known that Samsung OLED was no longer a customer and was no longer going to be a customer. That is, at least our read of that, is that's a fact-finding. That is finding facts not alleged on the face of the complaint. And it becomes problematic in the sense that where do you draw the line? Anything that is material, defenders are going to argue, well, we must have known about that. It's important to the company. We must have known about that. But under Section 11, you can only allege claims based on material misstatements and omissions. Where does it stop? I see defendants saying it's a 67-person company with two products. Well, what if it's a 100-person company? What if it's three products? What if there are 14 customers or 15 customers? The issue is here we allege from the face of the pleading that at the time of the prospectus, the state of affairs was such that it was the beginning of the end of the relationship between its principal OLED customer and Ledis. And that's really the central claim. There is a plausible scenario here from the face of the complaint that defendants did not know that Ledis OLED was starting to get its product from Samsung Electronics and was poised to get that product from here on out. And that's exactly what happened. So to say that they absolutely knew, because it was the most important product that the company had, is finding a fact at this stage which is not on the face of this complaint. And I, again, respectfully submit that Vess and Dow support the proposition that it's the allegations as pled, as expressly pled. If they sound in fraud, then that's a problem. But here they sound exclusively in negligence. And, again, I will refer the Court to the Kensington case, because the Kensington case did strip away one allegation, like the witnessing and expecting allegation here, and found that the complaint passed muster under Rule 8A. And my time is up. Okay. Can I ask you one other question? Please. And that is, was there any distinction made or does the complaint draw any distinction between the underwriters and the company defendants? The complaint Are they all in the same boat? I mean, they sink or swim in the same boat, in your view? No. Our view is that if we're going to take the – if the position is such that the must-have-known argument flies here, for lack of a better description, if that's the argument, one of the arguments I was going to make from a policy perspective is how do the underwriters fall within that bucket? How could they must have known of what was going on at the company? And then that raises another concern of – Well, but as the case was tried in the district court, were there any distinctions drawn? I mean, did you make a pitch that even if you believe that 9B applies to allegations against the company, it doesn't apply to the underwriters for X reasons? Yeah. There's nothing on the face of the complaint that suggests that the underwriters were involved in the day-to-day activities at the company. And the underwriters are only discussed in the counts, not with respect to the substantive facts in the case. So my position would be that they cannot benefit from this new category of sounds and fraud that dependents must know of things that are material to a company. Okay. Thank you, counsel. Thank you, Your Honor. Both of you, all of you, the matter just argued will be submitted. And we'll now hear an instant replay. Ah.
judges: Rymer, Nelson, Paez